DAVID L. ANDERSON (CABN 149604)
United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

BRIGGS MATHESON (CABN 291287)
Assistant United States Attorney

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-6844
FAX: (415) 436-7234
Briggs.Matheson@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>HERMAN MURILLO,<br>Defendant. | **CASE NO. 19-CR-129-MMC**<br>**UNITED STATES' SENTENCING MEMORANDUM**<br>Hearing Date: August 21, 2019<br>Time: 2:15 p.m.<br>Judge: Hon. Maxine Chesney |

## I. INTRODUCTION

On April 25, 2019, defendant Herman Murillo pleaded guilty to Counts One and Two of the Indictment charging him with being a felon in possession of ammunition and assaulting a federal employee with a deadly weapon, respectively. PSR ¶ 2; Dkt. No. 14 (Plea Agreement). The government has agreed to recommend a sentence within the Guidelines range as calculated in paragraph 7 of the Plea Agreement. Accordingly, the government respectfully recommends that the court impose a sentence of 78 months of imprisonment, followed by three years of supervised release, restitution, and a $200 special assessment.

## II. BACKGROUND

### A. Offense Conduct

On January 14, 2019, Victim-1 ("V1"), a United States Postal Service ("USPS") mail carrier, was delivering mail near Murillo's residence. PSR ¶ 6. For months, V1 had been having problems delivering mail to Murillo's residence due to encounters with Murillo's dogs. *Id.* As a result, in December 2018, USPS terminated mail delivery to Murillo's residence. *Id.* As V1 passed Murillo's house on January 14, Murillo yelled at V1, "Why don't you deliver my mail?" PSR ¶ 7. V1 walked to his mail truck and continued his work away from Murillo's residence. *Id.* As V1 was handling mail in the back of his USPS mail truck, he saw Murillo, accompanied by his pit bull, approach the mail truck, pull out a firearm, and point it at V1. *Id.* ¶ 8. V1 immediately called 911. *Id.*

San Francisco Police Department ("SFPD") officers responded and met with V1, who told the officers that Murillo had just pointed a gun at him. PSR ¶ 9. The officers responded to Murillo's residence where they made contact with Murillo's brother-in-law. PSR ¶ 10. Officers confirmed that Murillo was on probation in San Francisco County with a search-and-seizure condition, and conducted a search of the residence. *Id.* During the search, the officers found a loaded 9mm semi-automatic pistol and a 30-round 9mm extended magazine on top of a clothing dresser. *Id.* Officers also found next to the gun a wallet with payment cards bearing Murillo's name, and a shoulder holster under a nearby bed. *Id.*

As the officers entered the residence, Murillo arrived outside and was taken into custody. PSR ¶ 11. As Murillo was taken away from the scene, he spontaneously yelled various threats—captured on SFPD body-worn camera—including, "bitch, I'm gonna fuck you up"; "I'm gonna put all my homies on that nigga"; "call the police on me you bitch nigga"; and "I bet his shit move with a fucking shotgun." *Id.*

### B. Plea Agreement and Applicable Guidelines Calculation

On April 25, 2019, pursuant to the parties' Plea Agreement, defendant pleaded guilty to Counts One and Two of the Indictment charging him with being a felon-in-possession of ammunition in violation of 18 U.S.C. § 922(g), and assaulting a federal employee with a deadly weapon under 18 U.S.C. § 111(b). *See* Dkt. No. 1 & PSR ¶¶ 2–3. The Guidelines calculation set forth in paragraph 7 of the Plea Agreement resulted in an adjusted offense level of 19. The government agrees with Probation's

determination that Murillo is in Criminal History Category VI. Based on an offense level of 19, the resulting Guidelines range is 63 to 78 months. As detailed below, the United States recommends a sentence of 78 months imprisonment.

Probation has calculated a total offense level of 23, and recommends that Murillo is in Criminal History Category VI, resulting in a Guidelines range of 92 to 115 months. Probation's offense level calculation includes a four-level enhancement, pursuant to U.S.S.G. § 2K2.1(b)(6)(B). Probation recommends a low-end Guidelines sentence of 92 months of imprisonment, followed by three years of supervised release, restitution, and a $200 special assessment. *See* PSR, Sentencing Recommendation.

## III. DISCUSSION

### A. Applicable Law

The Court should impose a sentence sufficient, but not greater than necessary, to reflect the purposes of sentencing that Congress identified in 18 U.S.C. § 3553(a)(2). *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). The Court should begin the process of determining an appropriate sentence by calculating the correct sentencing range under the Guidelines. Id. After determining the appropriate Guidelines calculations, the Court should then evaluate the sentence for substantive reasonableness in light of the factors set out in Section 3553(a). *Carty*, 520 F.3d at 991–93.

Under 18 U.S.C. § 3553(a), in arriving at the appropriate sentence for the defendant, the Court should consider these factors applicable to this case, among others:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(3) the need for the sentence imposed to afford adequate deterrence to criminal conduct;

(4) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct;

(5) the need to provide restitution to any victims of the offense.

\\

**B. A Sentence of 78 months is sufficient and not greater than necessary to comply with 18 U.S.C. § 3553(a).**

Murillo's conduct in this case is the latest escalation in a series of violent and/or firearms-related offenses over the past decade. The facts of this case, underscored by Murillo's history of impulsive violence and affinity for dangerous weapons, warrant a sentence of 78 months of imprisonment.

**1. Nature and Circumstances of the Offense**

As detailed in the PSR and the Plea Agreement, Murillo committed a brazen, mid-day assault on a public employee in the middle of the street in a residential neighborhood. At least two residents in the neighborhood were present and witnessed part the assault. PSR ¶ 12. One of those residents was outside speaking with V1 when Murillo approached the mail truck. *Id.* The resident retreated to his house when V1 realized that Murillo was aggressively approaching to confront him, and V1 told the resident to get inside. PSR ¶¶ 12, 14. Murillo brashly confronted V1, pointing the pistol directly at him and taunting him to "take pictures" when V1 pulled out his phone to call 911. *Id.* Murillo not only caused V1 to fear for his life—he also caused lasting disruption to V1's relationship with the neighborhood where he previously enjoyed delivering mail and engaging with the residents.

Murillo's decision to assault V1 with a loaded handgun is especially troubling in light of his reason for doing so: he was frustrated that he was temporarily required to pick up his mail from his local post office, instead of receiving it at his house. Murillo impulsively responded to a short-term, minor inconvenience by grabbing a gun loaded with ammunition he was prohibited from possessing, leaving his house, and confronting V1.

A sentence of 78 months of imprisonment will adequately reflect the seriousness of Murillo's conduct, promote respect for the law, and provide just punishment for his crimes. 18 U.S.C. § 3553(a)(2)(A). A sentence of that length will also adequately ensure the public's safety from further violent conduct by Murillo. *Id.* § 3553(a)(2)(C).

**2. History and Characteristics of the Defendant**

Murillo's history and personal characteristics also support a lengthy sentence. As his past crimes show, this offense is not an isolated event. Murillo is a danger to the community in the truest sense of

the word. His history is littered with offenses involving violence and guns. The PSR recounts these incidents, which stretch back nearly a decade. *See* PSR ¶¶ 31–37.

This is not the first time Murillo has been convicted for unlawfully possessing a firearm or ammunition. Nor is it the first time he has assaulted someone with a deadly weapon. Indeed, this is not even the first time Murillo has been convicted for conduct that involved brandishing a gun at a public employee. Just two-and-a-half years ago, Murillo was convicted of kidnapping after he was arrested for brandishing a pistol at a MUNI bus driver in San Francisco. *See* PSR ¶ 36. On that occasion, police officers responded to a "Shot-Spotter" notification and report of an individual firing a gun. *See* Dkt. No. 5-7 (Declaration of Briggs Matheson in Support of Motion to Detain, Ex. 7). A San Francisco municipal bus driver informed the officers that Murillo boarded his bus and asked if the bus stopped at 850 Bryant Street; the driver informed Murillo that it did not. *Id.* at US-000246. Murillo proceeded to "mouth[] off" to the diver, then pulled out a pistol, approached the bus driver, and asked, "Are you gonna take me there or what?" *Id.* Murillo then began arguing with other passengers, and the bus driver pulled over. *Id.* at US-000246-247. Murillo exited the bus, started walking northbound, and fired three shots into the air. *Id.* at US-000247. Officers responding to the scene quickly encountered Murillo, and, after a brief foot chase, apprehended him and found the gun he had tossed as he fled. PSR ¶ 36. Murillo received an eight-year suspended sentence for this offense. He served just one year in county jail. PSR ¶ 36.

Just one year before that incident, in March 2015, Murillo was convicted for carrying an unregistered and loaded firearm. PSR ¶ 35. Prior to that conviction, in April 2010, Murillo was arrested and later convicted of assault with a deadly weapon after he punched one victim and accosted another with a knife. PSR ¶ 33. Earlier, in July 2008, he was arrested and later convicted for threatening his ex-girlfriend. PSR ¶ 31. Over the course of the past decade, Murillo has also received multiple alcohol-related convictions. As this history shows, Murillo's presence in the community comes at great cost to others. Murillo needs to be separated from society; the sentence imposed in this case must protect the public from further crimes by him. *See* 18 U.S.C. § 3553(a)(2)(C).

As noted by Probation, all throughout this time when Murillo committed the offenses above, he was receiving treatment for his PTSD stemming from his gunshot wound in 2008. But that treatment did nothing to curb his violent impulses or his affinity for dangerous weapons. Moreover, despite

spending most of the last decade on county probation, and receiving multiple sentences of incarceration—including an eight-year suspended sentence in 2016—Murillo has never been deterred from violently attacking others. Indeed, at the time of this offense, he was still on county probation stemming from his kidnapping conviction in 2017. It is crucial to both specific and general deterrence that the public understand and believe that when a violent felon, who is prohibited from possessing firearms and ammunition, assaults a federal employee with a deadly weapon, the consequences will be just. Murillo's PTSD and related substance abuse problems may be substantial and should be addressed as part of his rehabilitation. But they are not an excuse for, or a mitigation of, his continuous violent and impulsive conduct.

### C. Restitution

V1 estimates that Murillo's assault resulted in approximately $1,880 in counseling and other related expenses. To date, the government has not received documentation from V1 to ascertain the precise amount of V1's losses. Pursuant to 18 U.S.C. § 3664(d)(5), the government requests that the Court set a date for a final determination of V1's losses no more than 90 days after he is sentenced. Murillo has agreed to pay restitution in the amount calculated by the Court. Dkt. No. 14 ¶ 9.

## IV. CONCLUSION

With full consideration of all the sentencing factors set forth in 18 U.S.C. § 3553(a), the United States respectfully requests that the Court impose a sentence of 78 months of imprisonment, three years of supervised release, and a $200 special assessment.

DATED: August 14, 2019

Respectfully submitted,

DAVID L. ANDERSON
United States Attorney

*/s/Briggs Matheson*
BRIGGS MATHESON
Assistant United States Attorney